**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ISABEL RUBINAS, and )<br>IJR CORP., )<br> )<br>    Plaintiffs, )<br> )<br>v. )<br> )<br>NICOLAS MADUROS, DIRECTOR, )<br>CALIFORNIA DEPARTMENT OF )<br>TAX & FEE ADMINISTRATION, )<br> )<br>    Defendant. **)** | Case No. |

**Declaration of Isabel Rubinas**

1. My name is Isabel Rubinas. I am over the age of 18. I am under no legal disability that would prevent me from offering the following testimony. I make this declaration on the basis of personal knowledge.

2. I own and operate a small eCommerce business, IJR Corp. d/b/a Lollipop Seeds, from my home in Glen Ellyn. Lollipop Seeds offers children's clothing. Primarily, I supply goods to Amazon's store via Amazon's Fulfilled by Amazon (FBA) program. The vast majority of my business is on Amazon.com. I also have my own website, www.shoplollipopseeds.com, from which consumers can purchase goods directly, but I only had a few dozen such sales to California in 2020.

3. FBA works as follows. I propose a listing to Amazon—for example, children's pajamas. If Amazon chooses to accept the listing, Amazon will direct me where to ship the pajamas for Amazon to store them, and provide me with shipping instructions and a shipping label. Typically, Amazon directs me to ship items to a facility near Chicago

Exhibit 2

(e.g., Cicero), although sometimes Amazon directs me to ship to locations as far away as South Carolina or California or other states. Once Amazon takes custody of the goods, Amazon will move them around the country to various Amazon FBA facilities. In other words, just because Amazon tells me to ship an item to Amazon in one location does not mean it will stay there. I have no control over Amazon's movement of inventory.

4. I also have no control over how Amazon presents search results on Amazon.com, processes transactions with consumers, or ships FBA orders to consumers, whom Amazon deems Amazon's customers. Amazon handles those aspects of the sale directly and only remits payment to me after deducting Amazon's portion (profit, fees, etc.). Amazon also generally prevents me from contacting consumers directly so that Amazon can control the customer relationship. As you can see, FBA is a consignment model. I supply goods but have little to no control over what Amazon does with them once they enter Amazon's store.

5. In July 2019, the California Department of Fee & Tax Administration (CDTFA) contacted me in Illinois and stated that I was required to collect California's use tax on the sales of items—in Amazon's store—that Amazon stored in California. I trusted that CDTFA's explanation of the law was accurate, so I registered with the agency to collect use tax. I gathered various details about the sales at issue and provided them to CDTFA's agent, Shannon Hale. I paid the amounts the agency claimed were due for 2019 (over $2,600), using my own money rather than money collected from consumers at the point of sale.

6. Based on Ms. Hale's direction, I also began collecting California use tax for sales on my website, even though sales on my website to California are well below California's

"*Wayfair* threshold" of $500,000. In essence, California is penalizing me for using Amazon's FBA program, and depriving me of the protections I am entitled to as a small business. The burden of tax collection and reporting is significant for a business of my size. I am not sure it is even worth it to maintain my own website at this rate.

7. Eventually, Ms. Hale informed me that I owed over $10,000 in use taxes for sales on Amazon from 2017–2018—*i.e.*, before CDTFA contacted me. I explained to Ms. Hale that I did not know I was supposed to collect the taxes on those sales from consumers (i.e., Amazon's customers), that I had not collected those sums from consumers, and that I could not afford to pay that amount out of Lollipop Seeds. As of November 2020, my business was at a loss of approximately -$1,700—plus I owe $8,400 to one of my main vendors, among other obligations.

8. Ultimately, Ms. Hale and I lost touch during the pandemic. On December 1, 2020, Ms. Hale left me a voicemail (which I did not review at the time) stating that unless I agreed to a "payment plan" within three days, CDTFA would "proceed with further collection action."

9. On December 19, 2020, I opened my mail and was horrified to find a notice from Chase Bank stating that they had frozen my Illinois bank account on orders from CDTFA.[1] On December 21, 2020 CDTFA then took $2,367.56 from my Chase account.

10. To the best of my knowledge, other than Ms. Hale's vague statement about "further collection action," she and CDTFA did not give me notice that they would seize my Chase bank account and take my funds. Instead, I received a letter from CDTFA on

---

[1] December 11, 2020 Chase Letter re Levy, attached as Exhibit 1.

January 2, 2021 saying that CDTFA "seeks to levy upon" an account the agency seized weeks earlier.[2]

11. In early January 2021, I received a letter from CDTFA dated December 29, 2020 stating that I owed $10,224.08 in taxes, interest, penalties, and "other."[3] CDTFA's letter ignores the fact that CDTFA took over $2000 from my Chase account more than a week before the date of that letter.

12. Not only is this situation causing me distress, CDTFA may destroy my business and livelihood. My business was down 75% in 2020 due to the pandemic as consumers cut discretionary spending. As I mentioned above, my business is operating at a loss—I cannot pay the $10,000 CDTFA demands. I have various commercial financing obligations that I need the money in my Chase account to cover. For example, I owe Amazon for storage fees on January 15. When Amazon tries to draw the payment from my Chase account and finds the funds inaccessible, Amazon can seize my inventory and sell it for pennies on the dollar.

13. I barely survived in December: I had a loan payment due to Amazon on Christmas Day, which I had just enough funds in my Amazon.com sales account to cover; had I defaulted, Amazon would have seized my inventory then. Needless to say, that made a difficult Christmas season even more challenging.

14. I also owe vendors for spring inventory, with payments due between now and mid-January. I cannot order additional inventory to grow and keep my business going. Currently I am desperately selling inventory under cost to try and generate cash to keep the business alive.

---

[2] CDTFA "Tax/Fee Debtor Copy" of Letter re Levy, attached as Exhibit 2.
[3] December 29, 2020 CDTFA Letter, attached as Exhibit 3.

15. My story was featured in an *LA Times* article on December 28, 2020, which was highly critical of CDTFA's actions.[4] Almost immediately, different CDTFA officials began calling me to "resolve" the issue.

16. I cannot keep going like this and will be forced to shut down soon. In other words, CDTFA's actions will likely be the end of my business.

17. This situation is causing financial distress to my family. I am unable to pay myself, and we are living paycheck-to-paycheck on my husband's income during a difficult time. The loss of my business will cause serious financial hardship.

18. I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 6th, 2021.

s/ Isabel Rubinas

---

[4] *LA Times*, "California is Clobbering Small Businesses with a Retroactive Tax Grab" (December 28, 2020), https://www.latimes.com/opinion/story/2020-12-28/california-online-sales-tax-retroactive-collection.