IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ISABEL RUBINAS, and ) <br> IJR CORP., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> NICOLAS MADUROS, DIRECTOR, ) <br> CALIFORNIA DEPARTMENT OF ) <br> TAX & FEE ADMINISTRATION, ) <br> ) <br> Defendant. ) | Case No. 1:21-cv-00096 <br><br> Hon. Edmond E. Chang |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**Introductory Statement**

Plaintiffs Isabel Rubinas and IJR Corp. ("Ms. Rubinas") seek urgent relief to stop an ongoing violation of Ms. Rubinas's federal civil rights, which will likely destroy her small business in mid-January.

**Summary of the Case**

The State of California has unlawfully seized Ms. Rubinas's bank account and withdrawn her money, which will prevent her from satisfying debt obligations due in the coming weeks. That will likely doom her small business—a children's clothing boutique she runs from her kitchen table in Glen Ellyn—which has already been devastated by the pandemic.

Why would California do that? And why is this a federal case? The answers have to do with an extralegal subsidy to Amazon and federal limits on state power. The challenged conduct violates, *inter alia*, the Internet Tax Freedom Act and the Due Process Clause. California's

1

Treasurer, Fiona Ma, has pleaded for California officials to stop their "unlawful, unconstitutional, and impractical" actions.[1] But Defendant will not yield. The Court should enjoin further violations while this case proceeds.

## Factual Background

Ms. Rubinas runs a children's clothing boutique, Lollipop Seeds, from her Chicagoland home.[2] The pandemic took her sales down 75% in 2020. California's tax agency, the California Department of Tax & Fee Administration, took what she had left and still wants more.

Although Ms. Rubinas has her own website (www.shoplollipopseeds.com), the vast majority of her business is in supplying goods for Amazon's store, Amazon.com. Ms. Rubinas is what Amazon calls a "third-party merchant," who supplies the "Fulfilled by Amazon" or "FBA" program. She consigns goods with Amazon, which takes custody of the goods, stores them in a network of nearly 200 FBA warehouses around the country, offers them to Amazon.com shoppers, handles sales, delivers them to Amazon customers, and—after deducting fees and the lion's share of the profit—remits a fraction to Ms. Rubinas.[3] The California Court of Appeal summarized Amazon's model as follows:

> As a factual and legal matter, Amazon place[s] itself between [upstream suppliers] and [consumers] in the chain of distribution . . . . Amazon accept[s] possession of the product, . . . store[s] it in an Amazon warehouse, attract[s] [consumers] to the Amazon website, provide[s] [consumers] with a product listing . . . , receive[s] [consumer] payment for the product, and ship[s] the product in Amazon packaging.

*Bolger v. Amazon.com, LLC*, 53 Cal. App. 4th 431, 438 (2020), *review denied*, 2020 Cal. LEXIS 7993 (Cal. 2020). Amazon's FBA program is a high-tech consignment store, albeit one

---

[1] March 8, 2019 Letter from Treasurer Fiona Ma, CPA, to Governor Gavin Newsom, Exhibit 1.
[2] Declaration of Isabel Rubinas ¶ 2, Exhibit 2.
[3] *Id.* ¶¶ 3–4.

with end-to-end control and market dominance.[4] Amazon's control over product storage and distribution to its customers is critical to this case. Amazon alone makes the decision about where to store what the company calls "our inventory of your [*i.e.*, suppliers like Ms. Rubinas] products."[5] Amazon alone decides which warehouses from which to fulfill its customers' orders.[6]

Suppliers like Ms. Rubinas do little more than propose a supply offer to Amazon and, if Amazon accepts, ship goods to whichever Amazon warehouse directs.[7] Amazon usually orders Ms. Rubinas to "ship to a facility near Chicago (e.g., Cicero)," but Amazon "sometimes directs [her] to ship to locations as far away as South Carolina or California or other states."[8] Goods don't stay put: "[o]nce Amazon takes custody of the goods, Amazon will move them around the country to various Amazon FBA facilities."[9] Ms. Rubinas has "little to no control over what Amazon does with [goods] once they enter Amazon's store."[10]

Since Amazon.com is a "store," one would expect Amazon to collect sales taxes like stores do.[11] After all, as CDTFA once explained while preparing to make Amazon collect taxes, "Amazon has possession of the property and the power to transfer title to the consumer. Since Amazon is handling the merchandise and all aspects of the sale, [CDTFA] would consider them

---

[4] Consignment is not the exclusive domain of quirky stores selling used goods. Major retailers use consignment to manage inventory risk. *See, e.g., Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58 (2d Cir. 2012) (describing how Costco uses a consignment model); *TSA Stores, Inc. v. Sport Dimension, Inc.*, 601 B.R. 599 (Bankr. D. Del. 2019) (same as to The Sports Authority).
[5] Amazon, Business Solutions Agreement at F-5: Fulfillment, https://sellercentral.amazon.com/gp/help/external/G1791?language=en_US.
[6] Rubinas Declaration ¶ 4.
[7] *Id.* ¶ 3.
[8] *Id.*
[9] *Id.*
[10] *Id.* ¶ 4.
[11] Written Testimony of Jeffrey P. Bezos, U.S. House of Representatives (July 29, 2020), https://assets.documentcloud.org/documents/7009139/Jeff-Bezos-Written-Testimony.pdf (testifying that Amazon.com is "our store" and consumers are the company's "customers").

the retailer, and Amazon would have to collect tax on the transaction."[12] That would comply with both common sense and California law, which has for nearly a century required consignment-type stores to collect taxes since they are at the point of sale.[13]

Problem was, Amazon's prices would be lower—and Amazon's sales would be higher—if Amazon did not have to collect taxes on sales: it's an instant advantage over competitors. So, at Amazon's urging late one night in 2012, CDTFA "updated" its position and let Amazon refuse to collect taxes on FBA sales.[14] That subsidy prevailed until recently, costing the state billions.[15]

Why would the state forgo so much revenue? California's Treasurer Fiona Ma, who tried to correct the situation, explains: the "[n]umber one" reason was that "the governor's office has been trying to woo Amazon into putting a headquarters here. I've been pushing [on tax collection] and they haven't wanted to do anything up front."[16]

If things had stayed like that, it would have been a bad deal for California citizens and competing retailers, but it would not have led to this case. Recently, though, CDTFA changed its mind—someone needs to pay those taxes. Not Amazon, since the company remains powerful. Not California citizens, who are liable for buying untaxed goods,[17] since they have voting power. Instead, working from a list of supplier names provided by Amazon, CDTFA began targeting

---

[12] September 10, 2012 Email from Venus Stromberg on behalf of Deputy Director Garza (CDTFA) to Declan McCullagh (*CNET.com*), Exhibit 3. At that time, CDTFA was known as the Board of Equalization. *See* Complaint at 5 for the history of the agency's name change.
[13] *See* CDTFA, Reg. 1569, "Consignees and Lienors of Tangible Personal Property for Sale," https://www.cdtfa.ca.gov/lawguides/vol1/sutr/1569.html ("effective August 1, 1933"); CDTFA, "Publication 114, Consignment Sales," https://www.cdtfa.ca.gov/formspubs/pub114/#Sales.
[14] Declan McCullagh, "Amazon Shoppers Will Squeeze Through California Tax Loophole," *CNET.com* (September 11, 2012), https://www.cnet.com/news/amazon-shoppers-will-squeeze-through-calif-tax-loophole/.
[15] August 31, 2017 Letter from Fiona Ma, Chair, BOE (now CDTFA) to Keely Martin Bossler, Cabinet Secretary, Office of Governor Brown, Exhibit 4. The history of CDTFA's subsidy to Amazon is presented in greater detail in the Complaint.
[16] David Dayen, "The 'Amazon Tax' Ruling: Disrupting the Disruptors?," *Capital & Main* (July 10, 2018), https://capitalandmain.com/the-amazon-tax-ruling-disrupting-the-disruptors-0710.
[17] CDTFA, "California Use Tax," https://www.cdtfa.ca.gov/taxes-and-fees/use-tax.htm.

4

"hundreds of thousands of [mostly non-resident] third-party merchants on Amazon who were informed by [CDTFA] that *they* should have been collecting taxes on sales to California residents as far back as 2012."[18] According to CDTFA agents, if Amazon's suppliers don't pay, they can be found "guilty of a felony," fined thousands of dollars, and "imprison[ed] for 16 months, two years, or three years."[19] CDTFA's justification is that when Amazon unilaterally chooses to store goods in Amazon's California warehouses, the agency acquires jurisdiction over Amazon's non-resident suppliers.[20] Federal law is otherwise, as explained below.

Ms. Rubinas is one CDTFA target. In 2019, the agency "contacted [her] in Illinois and stated that [she] was required to collect California's use tax on the sales of items—in Amazon's store—that Amazon stored in California."[21] Trusting CDTFA was acting lawfully, Ms. Rubinas obliged and paid "over $2,600," "using [her] own money rather than money collected from consumers at the point of sale."[22] Later CDTFA came back for more: "over $10,000 in use taxes for sales on Amazon from 2017–2018."[23] That was more than Ms. Rubinas could afford; Amazon had not collected those sums, and her business did not have that kind of cash.[24]

Ms. Rubinas and CDTFA lost touch during the pandemic, until she "opened [her] mail and was horrified to find a notice from Chase Bank stating that they had frozen [her] Illinois

---

[18] Harold Brubaker, "California Hits Philly-Area Amazon Seller with $1.6 Million Sales-Tax Bill," *The Philadelphia Inquirer* (November 5, 2019), https://www.inquirer.com/business/california-sales-tax-amazon-seller-philadelphia-business-20191105.html (emphasis added).
[19] CDTFA Correspondence to Amazon FBA Suppliers (emphasis added), Exhibit 5.
[20] CDTFA, "Fulfillment Centers," https://www.cdtfa.ca.gov/industry/fulfillment-centers.htm; *see also* CDTFA, "Form 38-A (7-19)," https://cdtfa.ca.gov/formspubs/forms.htm (claiming jurisdiction over non-residents who "were engaged in business in this state solely because you used a marketplace facilitator . . . to facilitate sales for delivery in this state and the marketplace facilitator stored your inventory in this state").
[21] Rubinas Declaration ¶ 5.
[22] *Id.*
[23] *Id.* ¶ 7.
[24] *Id.*

bank account on orders from CDTFA."[25] The agency subsequently withdrew $2,367.56, while continuing to demand the "full" $10,000+.[26]

The financial harm was immediate. Ms. Rubinas barely escaped defaulting on a loan to Amazon on Christmas Day.[27] She owes Amazon for storage fees on January 15. "When Amazon tries to draw the payment from [her] Chase account and finds the funds inaccessible, Amazon can seize [her] inventory and sell it for pennies on the dollar."[28] Ms. Rubinas also has payments due to vendors, and is "desperately selling inventory under cost to try and generate cash to keep the business alive."[29] On top of the emotional toll, CDTFA's actions will—if they persist—"likely be the end of [her] business."[30] Injunctive relief is necessary to prevent that tragedy.

### Legal Standard for Preliminary Injunctive Relief

Preliminary injunctive relief is "extraordinary" but often necessary to prevent ongoing or imminent civil rights violations. *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017). "A two-step inquiry applies. . . . First, the party seeking the [] injunction has the burden of making a threshold showing (1) that he will suffer irreparable harm" absent an injunction, "(2) inadequate remedies at law exist; and (3) he has a reasonable likelihood of success on the merits." *Id*. If the moving party makes such a showing, "the court must engage in a balancing analysis, to determine whether the balance of harms favors the moving party or whether the harm to other parties or the public sufficiently outweighs the movant's interests." *Id*. In civil rights cases, establishing a colorable constitutional violation is all-but-dispositive because "[e]nforcing a constitutional right is in the public interest," *Whole*

---

[25] *Id.* ¶ 9.
[26] *Id.* ¶¶ 9–11.
[27] *Id.* ¶ 13.
[28] *Id.* ¶ 12.
[29] *Id.* ¶ 14.
[30] *Id.* ¶ 16.

6

*Women's Health Alliance v. Hill*, 937 F.3d 864, 875 (7th Cir. 2019), and constitutional injuries are typically "irreparable," *Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011). So here.

**Argument**

The merits are fairly straightforward. Like all government actors, CDTFA is constrained by various federal laws that protect citizens and the interstate economy. At least two laws prevent CDTFA from seizing Ms. Rubinas's property: (1) the Internet Tax Freedom Act, which expressly preempts the putative tax-collection obligation behind CDTFA's seizure, and (2) the Due Process Clause, which bars CDTFA from regulating Ms. Rubinas based on Amazon's choices to store products in California.

First, however, Ms. Rubinas will address the Court's jurisdiction. CDTFA will argue that the Tax Injunction Act divests the Court of jurisdiction, and that even if the Court has jurisdiction, the Court should prudentially abstain under the comity doctrine. Neither position is correct because those rules expressly permit the exercise of jurisdiction where—as here—the state offers no means of otherwise vindicating the federal interests at stake. Thus, the Court can reach the merits and should preserve Ms. Rubinas's livelihood pending further litigation.

    a. **This Court has jurisdiction to hear this case.**

As a starting point, the Court has federal-question jurisdiction over this controversy under 28 U.S.C. § 1331, since Ms. Rubinas raises claims for violation of her federal civil rights. The real issue is whether there is some exceptional basis for finding that the Court lacks jurisdiction despite the federal questions presented. There is not.

    1. **The TIA and the comity doctrine only strip federal jurisdiction when states offer a meaningful remedy for vindicating federal rights.**

Federal courts have a "virtually unflagging" obligation to hear federal-question cases like this one. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014). And "[f]ederal courts, it was early and famously said, have 'no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.'" *Sprint Comms., Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (quoting *Cohens v. Virginia*, 19 U.S. 264 (1821)).

The Tax Injunction Act is a limited restriction: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law *where a plain, speedy and efficient remedy may be had in the courts of such State*." 28 U.S.C. § 1341 (emphasis added). But the TIA does not strip jurisdiction any time state taxes are involved—only when the text of the statute expressly applies. *See Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1 (2015).

As the Court explained, "the TIA is not keyed to all activities that may improve a State's ability to assess and collect taxes. Such a rule would be inconsistent not only with the text of the statute, but also with [the Court's] rule favoring clear boundaries in the interpretation of jurisdictional statutes." *Id.* at 11. In *Direct Marketing Association*, the Court reinforced that the TIA only applies to claims that squarely fall within the statutory text, which must be evaluated on a claim-by-claim basis. *See id.* at 12 n.1 (distinguishing between claims that do and do not implicate the TIA); *accord, e.g., U.S. ex rel. Boothe v. Sun Healthcare Grp., Inc.*, 496 F.3d 1169, 1176 (10th Cir. 2007) ("district courts should assess jurisdiction on a claim-by-claim basis").

Among other textual requirements, Congress ensured that plaintiffs must have a "plain, speedy and efficient remedy" for their federal claims somewhere. 28 U.S.C. § 1341. States can influence where claims are heard by deciding to offer litigants a meaningful remedy. But when litigants "cannot make their [constitutional] case in state court, [they] have no 'remedy' at all for their claims—never mind a 'plain, speedy and efficient' one—and the [TIA] does not bar their

8

federal suit." *A.F. Moore & Assocs. v. Pappas*, 948 F.3d 889, 896 (7th Cir. 2020). Further, federal courts "properly retain[] jurisdiction" when there is mere "uncertainty regarding the availability of a remedy." *Direct Mktg. Ass'n v. Bennett*, 916 F.2d 1451, 1453 (9th Cir. 1990) (citing, *inter alia*, *Alcan Alum. Ltd. v. Dep't of Rev.*, 724 F.2d 1294 (7th Cir. 1984) (same)).

So too with respect to the comity abstention doctrine, under which federal courts will sometimes decline to hear specific tax-related claims—but only if the state provides a certain and adequate remedy (and other factors compel abstention). There are various reasons CDTFA cannot meet its burden to justify prudential abstention, but the lack of a remedy is dispositive. The "'plain, adequate, and complete' requirement in the comity analysis is identical to the 'plain, speedy and efficient' requirement under the Tax Injunction Act. Since the Act does not bar [this Court] from exercising jurisdiction over this challenge, neither does the principle of comity." *Id.*

### 2. California law will prevent Ms. Rubinas from vindicating her federal rights.

California's design choices deprive Ms. Rubinas of an adequate state remedy, ensuring that this case may be brought in federal court. Those who would challenge CDTFA must navigate California's byzantine "pay up or shut up" system. *Andal v. City of Stockton*, 137 Cal. App. 4th 86, 90 (2006). Taxpayers have to undertake an administrative process, pay the disputed amount, and file a refund action in state court—a procedure that takes years and hundreds of thousands in attorney's fees. California also forbids injunctive relief: "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax." Cal. Const. Art. XIII § 32; Cal. RTC § 6931.

The upshot is that Ms. Rubinas cannot stop California from violating her rights in real-time. The best she could hope for is a delayed return of any money she surrenders, which will destroy her business and her rights.

9

Begin with her Internet Tax Freedom Act rights. The ITFA preempts state tax laws that uniquely burden the interstate e-commerce marketplace, which is of paramount federal interest. *See, e.g.*, *City of Chicago v. StubHub!, Inc.*, 624 F.3d 363, 366 (7th Cir. 2010) (recognizing preemptive force of the ITFA); *Performance Mktg. Ass'n v. Hamer*, 998 N.E.2d 54, 57 (Ill. 2013) (same; striking down discriminatory tax collection obligation). The ITFA is an unusually emphatic piece of federal legislation, having been enacted in 1996 and reauthorized four times with "enormous bipartisan support." *See* H.R. Rep. 113-510 (2014) (describing history and purpose of Congress's "ban" on discriminatory taxes).[31] Congress intended to prevent parochial interference with what is essentially a single national marketplace. Thus, under the ITFA, "[n]o State or political subdivision thereof may impose . . . discriminatory taxes on electronic commerce." *See* ITFA § 1101(a), codified at 47 U.S.C. § 151, Note.

Congress made the ITFA operate in real-time to prevent disruption of the interstate economy. *See id.* at Sec. 1101(a) (preempting states from "impos[ing]" discriminatory taxes in the first place); Sec. 1101(b) (contemplating that the ITFA would "modify, impair, or supersede" state tax collection). The ITFA has to stop discriminatory taxes before they are imposed, or else the operation of those taxes would frustrate Congress's judgment about how best to enable the national e-commerce marketplace. *See* H.R. Rep. 113-510 at 5 (recounting how Congress had to amend the ITFA to prevent "recalcitrant jurisdictions" from evading the statute).

Depriving Ms. Rubinas of a federal forum would mean that California could continue imposing a law Congress forbade while her case languishes in an administrative system. Not only would injunctive or declaratory relief be ineffectual years later at the end of such a case—California law would deprive her of it. By the time she got her money back, California would

---

[31] H.R. Rep. 113-510 is available from Congress here: https://www.congress.gov/113/crpt/hrpt510/CRPT-113hrpt510.pdf. The ITFA became permanent in 2016.

10

have imposed a preempted law for years, which would frustrate Congress's express intent and create just the kind of local interference with national e-commerce that led the legislature to enact and reauthorize the ITFA in the first place.

Moreover, CDTFA is doing the same thing to thousands of similarly-situated merchants, throwing a whole segment of e-commerce into disarray.[32] Worse still, other states are following California's lead, leaving Ms. Rubinas and other merchants facing a patchwork of preempted obligations involving the same fact pattern.[33] Applied at scale, California's system nullifies the ITFA. By contrast, giving present-tense life to the ITFA harmonizes with Congress's express direction in the Tax Injunction Act that litigants must have a "plain, speedy and efficient remedy" for their federal rights. 28 U.S.C. § 1341. With no meaningful ITFA remedy in state court, Ms. Rubinas can bring her ITFA claims in this Court.

California's remedies are likewise inadequate to vindicate Ms. Rubinas's due process claim. The "negative value" of any refund amount means that she likely could not even survive California's system.[34] And she should not have to waste years and thousands upon thousands of dollars battling an administrative agency who cannot lawfully exercise power over her in the first instance. Taken to the extreme, that application of the TIA and comity doctrine itself would raise

---

[32] *See, e.g., Philadelphia Inquirer*, supra n. 18; Tripp Baltz, "Amazon Sellers Hit by Huge Back-Tax Across the Country," *Bloomberg Tax* (March 2, 2020) https://news.bloombergtax.com/daily-tax-report-state/amazon-sellers-hit-by-huge-back-tax-bills-across-the-country; March 8, 2019 Letter from Treasurer Ma to Governor Newsom, Exhibit 1.

[33] *Id.* The TIA was inapplicable in similar circumstances of a nationwide issue involving numerous taxed entities and tax collectors because "plaintiffs' only effective remedy lies in the federal courts." *U.S. Steel Corp. v. Multistate Tax Comm'n*, 367 F. Supp. 107, 115–117 (S.D.N.Y. 1973), *judgment aff'd*, 434 U.S. 452 (1978).

[34] It is not even clear Ms. Rubinas could access the state system due to California's restrictive taxpayer-standing doctrine. *See, e.g., Scol Corp. v. City of L.A.*, 12 Cal. App. 3d 805, 808–09 (1970) (holding that non-resident retailer that remitted use tax, including from its own funds, was not a "taxpayer" and lacked standing to seek refund); *Direct Mktg. Ass'n v. Bennett*, 916 F.2d 1451, 1453 (9th Cir. 1990) (explaining that, for a variety of statutory and state doctrinal reasons, California taxpayer standing rules would impede refund suit by non-resident retailers, who are not considered "taxpayers").

constitutional concerns about the effective loss of due process rights. *Cf. Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017) (parties over whom California lacked personal jurisdiction were entitled to mandamus to effectuate their due process rights). Although some decisions have found specific California remedies adequate as to other claims, Ms. Rubinas is not aware of any appellate authority holding that such a delay, if not a loss, of personal jurisdiction rights is acceptable. Especially not since the Supreme Court breathed new life into personal jurisdiction doctrine in the last few years. *See Bristol-Myers Squibb, supra*; *Daimler AG v. Walden*, 571 U.S. 117 (2014). The Court has and should retain jurisdiction.

### b. Defendants violated the Internet Tax Freedom Act by demanding and then seizing Ms. Rubinas's property.

Turning to the merits, CDTFA violated the Internet Tax Freedom Act, which requires similar tax treatment between e-commerce and brick-and-mortar enterprises and preempts contrary state laws. *See* ITFA § 1101(a); § 1105(2), codified at 47 U.S.C. § 151, Note. Congress's intent was to prevent states from protecting local interests—like Amazon's California developments—at the expense of a smoothly-functioning national e-commerce economy.

Relevant here, the ITFA bars states from "impos[ing] an obligation to collect or pay the tax on a different person or entity than in the case of transactions involving similar property . . . accomplished through other means." *Id.* at Sec. 1105(2)(A)(iii). In essence, states must apply brick-and-mortar rules to similar e-commerce businesses. Laws that do otherwise "are expressly preempted by the ITFA and are therefore void and unenforceable." *Performance Mktg. Ass'n v. Hamer*, 998 N.E.2d 54, 59–60 (Ill. 2013) (striking down collection obligation that fell on e-commerce but not similar brick-and-mortar merchants).

Amazon FBA uses a consignment model, with the company taking control of goods, interfacing with customers, and ultimately conveying those goods to Amazon's customers. For nearly a century, CDTFA has imposed the tax-collection obligation on brick-and-mortar consignment stores.[35] As the agency explains to consignment stores, "You are responsible for . . . paying the sales tax on the retail selling price of consignment sales when you: have possession or control of the item you are selling, and can transfer ownership or use of the item to the buyer without further action on the part of the owner."[36]

By contrast, the agency has a special practice for Amazon—taking the tax-collection obligation from the store and retroactively shifting it to Amazon's upstream suppliers who consign goods to Amazon. The ITFA flatly preempts that discriminatory treatment of Ms. Rubinas. CDTFA's conduct is void *ab initio* because it is contrary to federal law.

    c. **The Due Process Clause bars CDTFA from imposing tax obligations on a non-resident like Ms. Rubinas.**

CDTFA is also exceeding its authority under the Due Process Clause, which constrains all government power in a free society. State tax authorities are like other state officials: they cannot regulate non-residents over whom the state lacks jurisdiction. The Supreme Court has long enforced "the due process requirement that there be 'some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax.'" *South Dakota v. Wayfair*, 138 S. Ct. 2080, 2093 (2018) (quoting *Miller Bros. Co. v. Maryland*, 347 U.S. 340, 344–45 (1954)). Absent personal jurisdiction, "the imposition of a tax would be *ultra vires* and void." *Miller Bros.*, 347 U.S. at 342. It follows that "the seizure of property by the state

---

[35] *See* CDTFA, Reg. 1569, "Consignees and Lienors of Tangible Personal Property for Sale," https://www.cdtfa.ca.gov/lawguides/vol1/sutr/1569.html ("effective August 1, 1933").
[36] CDTFA, "Publication 114, Consignment Sales," https://www.cdtfa.ca.gov/formspubs/pub114/#Sales.

under pretext of taxation when there is no jurisdiction or power to tax is simple confiscation and a denial of due process of law." *Id.*

"Building on the seminal case of *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), [the Court has] framed the relevant inquiry as whether a defendant had minimum contacts with the jurisdiction such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Quill Corp. v. North Dakota*, 504 U.S. 298, 307 (1992), *separate holding overruled by Wayfair*, 138 U.S. at 2099; *accord, e.g., Wayfair*, 138 S. Ct. at 2093 (invoking the same due process standard).

The question, then, is whether Ms. Rubinas created sufficient contacts with California via Amazon's choices, as CDTFA contends. The answer is no—the Supreme Court has repeatedly held that the "unilateral activity of a third party [] cannot satisfy the requirement of contact with the forum State" necessary to establish jurisdiction. *Walden v. Fiore*, 571 U.S. 277, 291 (2014) (collecting cases); *accord Matlin v. Spin Master Corp.*, 921 F.3d 701, 706 (7th Cir. 2019).

CDTFA cannot come close to meeting its burden because its jurisdictional theory is wrong. *See Matlin*, 921 F.3d at 705 (party seeking to establish personal jurisdiction has the burden of proof, which requires evidence). According to the agency, Amazon's decision to store goods in California controls the jurisdictional analysis as to Ms. Rubinas, but the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a [non-resident] has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Walden*, 571 U.S. at 284 (citation and grammatical marks omitted). As Ms. Rubinas explains, Amazon has sole control over which of Amazon's nearly 200 warehouses the company chooses to use.[37] And just because Amazon orders Ms. Rubinas to ship goods for

---

[37] Rubinas Declaration ¶¶ 3–4.

14

Amazon to take custody of them at one site—whether Cicero or Fresno—does not mean Amazon will keep the goods there; Amazon will move them around the country as the company sees fit.[38]

Amazon alone controls Amazon's storage choices, and Amazon alone is responsible for those choices. Thus, CDTFA lacks personal jurisdiction over Ms. Rubinas and cannot impose tax-collection obligations on her—much less seize her property. The agency's contrary position violates the Due Process Clause.[39]

### d. The other injunction factors favor relief.

Having established likely violations of Ms. Rubinas's civil rights, the other factors favor injunctive relief. Ms. Rubinas will lose her business and her rights, which are "irreparable injuries." *Ezell*, 651 F.3d at 699. And "[e]nforcing a constitutional right is in the public interest." *Whole Women's Health Alliance*, 937 F.3d at 875. Any harm to CDTFA is minimal at best, and requiring a bond is not appropriate given the constitutional rights at stake. *See, e.g., Smith v. Bd. of Election Comm'rs*, 591 F. Supp. 70, 72 (N.D. Ill. 1984).

### Conclusion

For the foregoing reasons, the Court should enjoin CDTFA from seizing Ms. Rubinas's property, order CDTFA to lift any existing levy on her property, and order CDTFA to return the property it has already seized, during the pendency of this litigation.

---

[38] *Id.*

[39] Ms. Rubinas also brings claims under the Commerce Clause and the Due Process Clause's restriction on excessively-retroactive taxes. To simplify the issues before the Court, she has not moved on those claims at this time, but observes that the *Pike* analysis under the Commerce Clause is straightforward. Forcing Ms. Rubinas to collect Amazon's taxes facially discriminates in favor of in-state interests, and also unduly burdens interstate commerce, whereas requiring Amazon to collect taxes on all of its sales—not just a subset—is obviously effective. *See Wayfair*, 138 S. Ct. at 2091 (describing *Pike* standard).

Respectfully submitted this 8th day of January, 2021.

*s/ Paul K. Vickrey*
Paul K. Vickrey
Vitale, Vickrey, Niro, Solon & Gasey LLP
311 S. Wacker Drive, Suite 2470
Chicago, IL 60606
Phone: (312) 236-0733
vickrey@vvnlaw.com

*s/ Aaron K. Block*
Aaron K. Block
The Block Firm LLC
Georgia Bar No. 508192*
4200 Northside Parkway NW
Building 1, Suite 200
404-997-8419
aaron@blockfirmllc.com
*(Application for admission pro hac vice pending)*

*s/ Paul S. Rafelson*
Paul S. Rafelson
Rafelson Schick, PLLC
Florida Bar No. 16958
2255 Glades Road, Suite 319
Boca Raton, Florida 33431
561-326-6529
paul@frsattorneys.com
*(Application for admission pro hac vice pending)*

**Counsel for Plaintiffs, Isabel Rubinas and IJR Corp.**