IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ISABEL RUBINAS, and IJR CORP., | |
| Plaintiffs, | Case No. 1:21-cv-00096 |
| v. | Hon. Edmond E. Chang |
| NICOLAS MADUROS, DIRECTOR, CALIFORNIA DEPARTMENT OF TAX & FEE ADMINISTRATION, | |
| Defendant. | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS'
SUPPLEMENTAL PRELIMINARY
INJUNCTION BRIEF**

## TABLE OF CONTENTS

**Page**

Introduction .................................................................................................. 1

Argument ..................................................................................................... 1

    I.    The Tax Injunction Act and Principles of Comity Bar Plaintiffs' Claims Under the Internet Tax Freedom Act ............................................. 1

        A.    The Internet Tax Freedom Act Is Not Exempt from the Tax Injunction Act .................................................................................. 1

        B.    Plaintiffs' Internet Tax Freedom Act Argument Boils Down to a Dispute About California Law, and Belongs in State Court ................................................................... 3

    II.    The Internet Tax Freedom Act Lacks a Private Cause of Action .............. 6

    III.    Plaintiffs Cannot Succeed on the Merits on Their Internet Tax Freedom Act Claims Because IJR Waived Those Arguments By Acknowledging Its Tax Liability in Tax Returns ....................................... 7

Conclusion ................................................................................................... 8

## TABLE OF AUTHORITIES

Page

**CASES**

*Alexander v. Sandoval*
    232 U.S. 275 (2001) ................................................................................................ 6

*Ashton v. Cory*
    780 F.2d 816 (9th Cir. 1986) .................................................................................... 1

*Blangeres v. Burlington N., Inc.*
    872 F.2d 327 (9th Cir. 1989) .................................................................................... 1

*Darne v. State of Wis., Dep't of Revenue*
    137 F.3d 484 (7th Cir. 1998) ................................................................................ 2, 3

*Fair Assessment in Real Estate Ass'n, Inc. v. McNary*
    454 U.S. 100 (1981) ................................................................................................ 7

*Federal Trade Commission v. Credit Bureau Center, LLC*
    937 F.3d 764 (7th Cir. 2019) .................................................................................... 6

*Fla. Dep't of State v. Treasure Salvors, Inc.*
    458 U.S. 670 (1982) ................................................................................................ 7

*Franchise Tax Bd. of Cal. v. U.S. Postal Serv.*
    467 U.S. 512 (1984) ................................................................................................ 8

*Hattem v. Schwarzenegger*
    449 F.3d 429 (2nd Cir. 2006) .................................................................................. 2

*j2 Global Communications, Inc. v City of Los Angeles*
    218 Cal.App.4th 328 (2013) .................................................................................... 7

*Levin v. Commerce Energy, Inc.*
    560 U.S. 413 (2010) ............................................................................................ 5, 6

*MSA Realty Corp. v. State of Ill.*
    990 F.2d 288, 292-293 (1993) ................................................................................. 7

*Performance Marketing Ass'n, Inc. v. Hamer*
    998 N.E.2d 54 (Ill. 2013) ......................................................................................... 7

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Pratt v. Comm'r*
    84 T.C.M. (CCH) 523 (T.C. 2002) ............................................................................8

*Rosewell v. LaSalle Nat. Bank*
    450 U.S. 503 (1981) ..................................................................................................7

*Scott Air Force Base Properties, LLC v. County of St. Clair, Ill.*
    548 F.3d 516 (7th Cir. 2008) ....................................................................................2

*Stockbridge-Munsee Community v. Wisconsin*
    922 F.3d 818 (7th Cir. 2019) ................................................................................6, 7

*Ex parte Young*
    209 U.S. 123 (1908) ..................................................................................................7

**STATUTES**

Tax Injunction Act, 28 U.S.C. § 1341 ..............................................................1, 2, 3, 7

47 U.S.C. § 151 ....................................................................................................6, 7

Internet Tax Freedom Act, 47 U.S.C. § 151 note ............................................ *passim*

49 U.S.C. § 11501 ..................................................................................................1, 2

Public Law No. 105-277, Division C, Title XI, §§ 1100-1109, 112 Statutes
    2681-719 (1998) ........................................................................................................6

Trade Facilitation and Trade Enforcement Act of 2015,
    Public Law No. 114-125, Title IX, § 922, 130 Statutes 281 .....................................6

**CALIFORNIA STATUTES**

California Government Code § 15570.22 ................................................................4

California Revenue and Taxation Code § 6015 ....................................................3, 4

California Statutes 1991, Chapter 85, § 1 ................................................................3

California Statutes 2017, Chapter 16, § 5 ................................................................4

# TABLE OF AUTHORITIES
## (continued)

Page

**CALIFORNIA REGULATIONS**

California Code of Regulations, Title 18, § 1569 .................................................... 3, 4, 5, 6

Former California Code of Regulations, Title 18, § 1969 (August 9, 1969) ........................ 3

## INTRODUCTION

This challenge to a California sales and use tax levy is barred for the reasons explained in the Court's January 18, 2021, memorandum opinion and order. Plaintiffs' supplemental brief fails to establish that the Internet Tax Freedom Act creates an exception to the Tax Injunction Act and principles of sovereign immunity that formed the basis for the Court's order. Defendant Nicolas Maduros, Director of the California Department of Tax and Fee Administration, therefore requests that this Court deny plaintiffs' renewed request for a preliminary injunction.[1]

## ARGUMENT

### I. THE TAX INJUNCTION ACT AND PRINCIPLES OF COMITY BAR PLAINTIFFS' CLAIMS UNDER THE INTERNET TAX FREEDOM ACT

#### A. The Internet Tax Freedom Act Is Not Exempt from the Tax Injunction Act

Plaintiffs contend that Congress impliedly created an exception to the Tax Injunction Act when it enacted the Internet Tax Freedom Act. Plaintiffs' premise is faulty: Congress does not create implied exceptions to the Tax Injunction Act. *Blangeres v. Burlington N., Inc.*, 872 F.2d 327, 328 (9th Cir. 1989) (improper to "carve out exceptions to the Tax Injunction Act unless Congress clearly expresses an intent to create an exception"); *Ashton v. Cory*, 780 F.2d 816, 820–21 (9th Cir. 1986) ("we cannot infer that Congress intended impliedly to take the drastic step of carving out an exception to the Tax Injunction Act" for the Employee Retirement Income Security Act).

For example, Congress has expressly established an exception to the Tax Injunction Act with respect to railroad property. 49 U.S.C. § 11501(b), enacted in 1995, prohibits a state from assessing property at a higher rate, by virtue of its value as a railroad, than the assessed value of surrounding commercial and industrial property. 49 U.S.C. § 11501(c) states: "Notwithstanding

---

[1] Plaintiffs have committed to accept dismissal of this action without requiring Director Maduros to file a motion to dismiss if the Court denies the motion for a preliminary injunction. (Docket No. 20 at p. 1.)

1

section 1341 of title 28…a district court of the United States has jurisdiction…to prevent a violation of subsection (b) of this section." In contrast, the Internet Tax Freedom Act does not refer to the Tax Injunction Act or 28 U.S.C. § 1341. If Congress had intended to create another exception to the Tax Injunction Act when it enacted the Internet Tax Freedom Act, it would have included a provision like 49 U.S.C. § 11501(c).

Plaintiffs contend that Congress, when it enacted the Internet Tax Freedom Act, must have intended to create an exception to the Tax Injunction Act that would allow federal courts to issue injunctions against state tax proceedings. (Docket No. 22 at pp. 3-9.) But, as between the two statutes, only the Tax Injunction Act mentions injunctions: "The district courts *shall not enjoin*, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. Congress expressed its intent by placing a prohibition against injunctions in the Tax Injunction Act, and by not including an exception to that prohibition in the Internet Tax Freedom Act.

Plaintiffs argue the Tax Injunction Act does not apply because the Internet Tax Freedom Act preempts certain state taxes. That argument was rejected in *Scott Air Force Base Properties, LLC v. County of St. Clair, Ill.*, 548 F.3d 516 (7th Cir. 2008), which affirmed the district court's determination that it lacked jurisdiction to determine whether the Military Housing Privatization Initiative preempted a county's authority to assess property tax on a parcel leased by the federal government to a private developer. Plaintiffs' addition of the phrase "in real time" does not change the analysis. (See Docket No. 22 at pp. 6-9 [asserting "Congress intended the Internet Tax Freedom Act to prohibit preempted tax collection in real time"].) For example, the Seventh Circuit held that the Tax Injunction Act barred a claim that a state tax statute was preempted by ERISA. *Darne v. State of Wis., Dep't of Revenue*, 137 F.3d 484, 489-490 (7th Cir. 1998).[2]

---

[2] The Second Circuit has expressed disagreement with *Darne*. *Hattem v. Schwarzenegger*, 449 F.3d 429, 427 (2nd Cir. 2006). This Court is, of course, bound by Seventh Circuit precedent.

2

ERISA was intended to preempt state statutes that relate to employee benefit plans "in real time" to the exact same degree that the Internet Tax Freedom Act was intended to preempt certain state taxes on internet businesses. *Darne* nevertheless held that "ERISA is not an exception to the Tax Injunction Act." *Ibid.* The Internet Tax Freedom Act is likewise not an exception to the Tax Injunction Act.

### B. Plaintiffs' Internet Tax Freedom Act Argument Boils Down to a Dispute About California Law, and Belongs in State Court

Plaintiffs' Internet Tax Freedom Act claims depend on a California sales tax regulation relating to consignment stores that was most recently amended in 1969. (Docket No. 22 at p. 14, referencing Cal. Code Regs., tit. 18, § 1569 ["Regulation 1569"].)[3] Regulation 1569 interprets and implements California Revenue and Taxation Code section 6015, which defines the term "retailer" for the purposes of the California sales and use tax, and which has not been substantively amended since 1949.[4] The California laws at issue therefore cannot possibly discriminate against online businesses because they predate the internet. This is confirmed by their text. Section 6015 states, in relevant part:

> (a) "Retailer" includes:
>
> (1) Every seller who makes any retail sale or sales of tangible personal property, and every person engaged in the business of making retail sales at auction of tangible personal property owned by the person or others.

---

[3] Plaintiffs correctly state that policy embodied in Regulation 1569 has been applied consistently since the 1930s. (Docket No. 22 at p. 14.) Regulation 1569 was adopted in November 1969. Cal. Code Regs., tit. 18, § 1569. Its predecessor was Former Regulation 1969: "Persons having possession of tangible personal property for the purpose of sale, and pawnbrokers, storage men, mechanics, artisans or others selling the property to enforce a lien thereon, are retailers with respect to sales of property to consumers and tax applies to the receipts from such sales." Former Cal. Code Regs., tit. 18, § 1969 (August 9, 1969). Former Regulation 1969 became effective August 1, 1933, and was codified on January 1, 1945. *Id.* (historical notes).

[4] A technical amendment in 1991 changed the numbers and letters associated with the subdivisions of section 6015, without changing the substance of the statute. Cal. Stat. 1991, ch. 85, § 1.

3

> (2) Every person engaged in the business of making sales for storage, use, or other consumption or in the business of making sales at auction of tangible personal property owned by the person or others for storage, use, or other consumption.
>
> [...]
>
> (b) When the [Department] determines that it is necessary for the efficient administration of this part to regard any salesmen, representatives, peddlers, or canvassers as the agents of the dealers, distributors, supervisors, or employers under whom they operate or from whom they obtain the tangible personal property sold by them, irrespective of whether they are making sales on their own behalf or on behalf of the dealers, distributors, supervisors, or employers the [Department] may so regard them and may regard the dealers, distributors, supervisors, or employers as retailers for purposes of this part.
>
> [...]

Cal. Rev. & Tax Code § 6015 (portions relating to specific industries omitted).[5] Regulation 1569 states:

> A person who has possession of property owned by another, and also the power to cause title to that property to be transferred to a third person without any further action on the part of its owner, and who exercises such power, is a retailer when the party to whom title is transferred is a consumer. Tax applies to his gross receipts from such a sale.
>
> Pawnbrokers, storage men, mechanics, artisans, or others selling the property to enforce a lien thereon, are retailers with respect to sales of the property to consumers and tax applies to the receipts from such sales.

Cal. Code Regs., tit. 18, § 1569. None of this language could be construed to discriminate against online businesses, and plaintiffs do not claim that the statute or regulation are discriminatory in and of themselves.

---

[5] Section 6015 includes the word "board," a reference to the California State Board of Equalization—the state agency that enforced the sales and use tax at the time. The Department was established in 2017 and "is the successor to, and is vested with, all of the duties, powers, and responsibilities of the [Board of Equalization]" with respect to sales and use taxes. Cal. Gov. Code § 15570.22, added by Cal. Stat. 2017, ch. 16, § 5 (A.B. 102).

4

Instead, plaintiffs assert that the Department misapplied California law when it concluded that plaintiff IJR Corp. owes sales and use tax. Plaintiffs contend that Amazon is a consignment store, but the Department is not properly following Regulation 1569 and is not treating Amazon the way it would treat a brick-and-mortar consignment store. (Docket No. 1 ¶¶ 44, 48; Docket No. 22 at p. 14.) In reciting the salient facts, plaintiffs fail to apprise this Court of why the Department concluded that Amazon is not a consignment store. In 2012, the Department's predecessor the California State Board of Equalization issued a tax opinion letter that explains that Amazon conducts its business operations through separate legal entities, and concluded that none of those business entities could be a consignment store because no single entity both (i) has possession of property owned by another, and (ii) has the power to cause title to that property to be transferred to a third person without any further action on the part of its owner. (RJN, Ex. 1 at pp. 9-12.)[6] The tax opinion letter explains that the company known as Amazon Fulfillment Services, Inc., maintains physical possession over a seller's goods, while a different company called Amazon Services LLC has the power to transfer title to Amazon's customers when products are sold. (*Ibid.*) The tax opinion letter found that no Amazon entity can be considered a consignment store because the two powers referenced in Regulation 1569 are not united in a single legal entity. (*Ibid.*) Plaintiffs' Internet Tax Freedom Act claims can be restated as a purely state-law contention that the Department's predecessor erred in its analysis of the responsibilities of the various Amazon corporate entities, and that the Department is therefore not properly following its own regulation. Comity dictates that this dispute about the proper application of California tax law be heard by a California court. *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 417 (2010) (comity doctrine "restrains federal courts from entertaining claims for relief that risk disrupting state tax administration").

---

[6] Plaintiffs are aware of the opinion letter—their attorneys included it as an exhibit to a complaint in the Eastern District of California that raises issues similar to this action. (RJN, Ex. 2, ¶ 32 and fn. 17.)

Plaintiffs misunderstand the comity doctrine when they ask this Court to "decline [defendant's] request to abstain under the comity doctrine." (Docket No. 22 at p. 13.) Comity is a mandatory doctrine that "precludes the exercise of original federal-court jurisdiction." *Levin*, 560 U.S. at 426. Comity applies whenever plaintiffs "object to their own tax situation," *id.* at p. 430, as long as the state remedy is "plain, adequate, and complete," *id.* at p. 422. Plaintiffs may allege that the Department has failed to follow Regulation 1569 and that the Department has thereby violated the Internet Tax Freedom Act in the courts of California. They therefore cannot pursue those arguments here.

## II. THE INTERNET TAX FREEDOM ACT LACKS A PRIVATE CAUSE OF ACTION

Federal statutes are not presumed to create a private right of action. *Alexander v. Sandoval*, 232 U.S. 275, 286 (2001). When a federal statute specifies enforcement mechanisms, the judiciary should not add others by "implication." *Stockbridge-Munsee Community v. Wisconsin*, 922 F.3d 818, 824 (7th Cir. 2019). The determination of whether a statute establishes a private cause of action depends on a "close analysis of statutory text and structure," rather than an exploration of statutory purpose. *Federal Trade Commission v. Credit Bureau Center, LLC*, 937 F.3d 764, 782 (7th Cir. 2019). The Internet Tax Freedom Act does not expressly create a private cause of action—it is designed to be enforced by the FCC or in state courts. This Court is therefore not a proper forum for plaintiffs' claims regarding the Internet Tax Freedom Act.

The Internet Tax Freedom Act is not formally codified in the United States Code. When it was enacted in 1998 as a three-year moratorium, the text of the Internet Tax Freedom Act was published as a note following 47 U.S.C. § 151 in the United States Code. Pub. L. No. 105-277, Div. C, Tit. XI, §§ 1100-1109, 112 Stat. 2681-719 (1998). Its term was extended through a series of temporary provisions until it was made permanent by the Trade Facilitation and Trade Enforcement Act of 2015, Pub. L. No. 114-125, Title IX, § 922, 130 Stat. 281. Even though it has been made permanent, the Internet Tax Freedom Act remains uncodified.

Its placement as a note following 47 U.S.C. § 151 is significant. Section 151 is the statute, originally enacted in 1934, that establishes the Federal Communications Commission. By publishing the Internet Tax Freedom Act as a note to the enabling statute for the FCC, Congress sent a clear signal that the FCC is the federal entity responsible for enforcing the act. Plaintiffs may seek redress with the FCC. States have also created state-court causes of action, including tax refund claims, where arguments based on the Internet Tax Freedom Act may be raised. *Performance Marketing Ass'n, Inc. v. Hamer*, 998 N.E.2d 54 (Ill. 2013) (holding that a state tax statute was preempted by the Internet Tax Freedom Act); *j2 Global Communications, Inc. v City of Los Angeles*, 218 Cal.App.4th 328 (2013) (rejecting Internet Tax Freedom argument in a tax refund action based on the merits of the claim). If Congress had intended to authorize private suits in federal court in addition to these remedies, it would have done so expressly. *Stockbridge-Munsee Community, supra,* 922 F.3d at p. 824.

Plaintiffs' invocation of *Ex parte Young*, 209 U.S. 123 (1908) does not assist them. The Tax Injunction Act was enacted in response to *Ex parte Young*, to "limit drastically federal court jurisdiction" to interfere with state tax issues. *Rosewell v. LaSalle Nat. Bank*, 450 U.S. 503, 522 and fn. 28 (1981); *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 102-103 (1981). Moreover, plaintiffs have asked this Court to order a return of levied funds, but a federal court may never order a state or state official to make a payment from the state's treasury in an *Ex parte Young* action. *Fla. Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 689-690 (1982); *MSA Realty Corp. v. State of Ill.*, 990 F.2d 288, 292-293 (7th Cir. 1993). Therefore, even if *Ex parte Young* might support some preemption actions where Congress has not created a private right of action, plaintiffs' claims are barred.

### III. PLAINTIFFS CANNOT SUCCEED ON THE MERITS ON THEIR INTERNET TAX FREEDOM ACT CLAIMS BECAUSE IJR WAIVED THOSE ARGUMENTS BY ACKNOWLEDGING ITS TAX LIABILITY IN TAX RETURNS

Even if this Court had jurisdiction, plaintiffs' Internet Tax Freedom Act claims would be barred because IJR admitted the tax liability at issue in tax returns submitted to the Department.

Defendant pointed out that statements made in a tax return are binding admissions, absent cogent evidence indicating they are wrong, *Pratt v. Comm'r*, 84 T.C.M. (CCH) 523 (T.C. 2002),[7] and the Department's tax assessments based on those tax returns "operate[] in a way that is functionally indistinguishable from the judgment of a court of law; it creates an absolute legal obligation to make payment by a date certain," *Franchise Tax Bd. of Cal. v. U.S. Postal Serv.*, 467 U.S. 512, 523 (1984). Plaintiffs' reply brief asserts disagreement with these legal principles, without providing any contrary citations. (Docket No. 13 at p. 7.) But the fact remains that IJR has admitted the tax liability to the Department. It retains the right to file an administrative claim for refund and then a suit for refund in a California court, but this Court should treat the tax returns and ensuing assessment as binding.

## CONCLUSION

For all of the foregoing reasons, the Court should reject plaintiffs' arguments regarding the Internet Tax Freedom Act and deny plaintiffs' motion.

Dated: March 19, 2021         Respectfully submitted,

MATTHEW RODRIQUEZ
Acting Attorney General of California
MOLLY K. MOSLEY
Supervising Deputy Attorney General


*/s/ Michael Sapoznikow*
MICHAEL SAPOZNIKOW
GINA TOMASELLI
Deputy Attorneys General
*Attorneys for Defendant Nicolas Maduros, Director, California Department of Tax and Fee Administration*

SA2021300080/34923726

---

[7] Defendant cited a non-precedential opinion of the United States Tax Court for this premise in his opposition brief. (Docket No. 12 at p. 15.) *Pratt* is precedential.

# CERTIFICATE OF SERVICE

| | | | |
|---|---|---|---|
| Case Name: | ISABEL RUBINAS, and IJR CORP vs. NICOLAS MADUROS, DIRECTOR, CALIFORNIA DEPARTMENT OF TAX & FEE ADMINISTRATION | No. | 1:21-cv-00096 |

I hereby certify that on <u>March 19, 2021</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL PRELIMINARY INJUNCTION BRIEF**

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>March 19, 2021</u>, at Sacramento, California.

| K. Vitalie | */s/ K. Vitalie* |
|---|---|
| Declarant | Signature |

SA2021300080
34933355