**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| ISABEL RUBINAS and IJR CORP., | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:21-CV-00096 |
| v. | ) ) ) | Judge Edmond E. Chang |
| NICOLAS MADUROS, DIRECTOR OF THE CALIFORNIA DEPARTMENT OF TAX & FEE ADMINISTRATION, | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Isabel Rubinas owns and operates a children's clothing business from her kitchen table in suburban Illinois. R. 1, Compl. ¶ 5.[1] Most of her sales are made online through Amazon.com. *Id.* She now faces a California tax bill for the sales she made in years past to California customers. Rubinas seeks declaratory and injunctive relief to prevent California's Department of Tax & Fee Administration from collecting taxes on those sales. (The co-Plaintiff in the lawsuit is the formal corporate entity through which she operates the business, *id.* ¶ 12, but for convenience's sake, the Court will refer just to Rubinas unless otherwise explained.) The Court previously denied Rubinas's motion for a temporary restraining order, R. 16, 17, and now turns to her motion for a preliminary injunction. Rubinas asks to compel California to return money

---

[1]Citations to the docket are denoted as "R." followed by the docket entry number.

seized from her bank account and to prohibit the State from seizing any more of her funds during the pendency of this litigation.

Rubinas's motion for a preliminary injunction is denied on essentially the same grounds that her motion for a temporary restraining order was denied: the Court lacks subject matter jurisdiction to hear her claims. Under the Tax Injunction Act, no federal court may "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy[,] and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. As detailed below and in the opinion rejecting a temporary restraining order, California does offer a plain, speedy, and efficient remedy, so the Tax Injunction Act prevents this Court from issuing the relief that Rubinas seeks.

## I. Background

For purposes of the preliminary injunction motion, the key facts are largely undisputed. For the reader's convenience, the facts are set out again here just as they were in the order that denied the temporary restraining order. R. 17. Isabel Rubinas owns and operates IJR Corporation, which does business as Lollipop Seeds. R. 1-2, Exh. 2, Rubinas Declaration ¶ 2. Lollipop Seeds sells children's clothing, and Rubinas runs the business out of her home in Glen Ellyn, Illinois. *Id.* She conducts most of her business over Amazon.com, through its Fulfilled by Amazon program. *Id.* ¶ 3. Under the program (which is widely known by the acronym FBA), once Amazon accepts a listing for clothing offered by Rubinas, Amazon then directs Rubinas to ship the clothing for storage in an Amazon warehouse. *Id.* ¶ 3. After Rubinas ships her products to

Amazon, she has no control over where they are stored or where they are sold. *Id*. For example, Amazon can ship the clothing to other warehouses across the country, with no say-so in the matter by Rubinas. *Id*. After the products are listed on Amazon, Amazon also takes over the processing of any sales, including shipping the products to customers and receiving the payments from customers. *Id*. ¶ 4. Indeed, when the customers pay, the money goes to Amazon first; Rubinas receives her cut of the sale only after Amazon deducts its profit, fees, and so on. *Id*. On the back end of the sale, almost all customer service is handled by Amazon: "Amazon also generally prevents me from contacting consumers directly so that Amazon can control the customer relationship." *Id*.

Until recently, neither Rubinas nor Amazon collected California sales and use tax on any of the products that she sold. *See* Rubinas Decl. ¶ 7. According to the Complaint, in 2012, California initially announced that it would require Amazon to collect sales and use tax on FBA sales, but then the State reversed that position. Compl. ¶¶ 32–33. It was not until July 2019, Rubinas says, that she first learned from California that she would be required to collect use tax on her California sales. Rubinas Decl. ¶ 5.[2]

After Rubinas learned about the tax obligation, she paid the assessed use tax of over $2,600 for tax year 2019. Rubinas Decl. ¶ 9. In January 2020, Rubinas's accountant also prepared and filed sales-and-use tax returns for 2017 and 2018. R. 12-

---

[2]California asserts that it actually emailed a notice to Rubinas in February 2019, and then began back-and-forth emails and phone calls with her. R. 12-1, Hale Declaration, ¶¶ 2–4. This difference in timing does not make a difference to the decision on the motion.

1, Hale Declaration ¶ 5. Before filing those tax returns, IJR Corporation had submitted to California a Power of Attorney form authorizing the accountant to act on the company's behalf. *Id.* ¶ 6. Based on the filed tax returns, Rubinas's business owed $2,621 for the 2017 tax year and $4,630 for the 2018 tax year. *Id.* ¶ 5. Sometime after the January 2020 submission of the tax returns, Rubinas informed an employee of the California Department of Tax and Fee Administration, Shannon Hale, that Rubinas would not be able to pay the assessed taxes. *Id.* ¶ 7. Hale emailed Rubinas with information about the Department's payment-plan options. *Id.* The two spoke on the phone on March 2, 2020, and Rubinas said that she would call Hale the next day to set up a payment plan. *Id.* But Rubinas did not call. *Id.*

According to Rubinas, she "lost touch" with Hale during the 2020 pandemic. Rubinas Decl. ¶ 9. But that is not the complete picture: in fact, on July 27, 2020, Hale called Rubinas and set up a phone call for August 4 to begin arrangements for a payment plan. Hale Decl. ¶ 8. Rubinas did not answer the phone at the appointment time, and then did not respond to Hale's voicemail reminder. *Id.*[3]

On December 1, 2020, Hale called Rubinas and left a voicemail saying that IJR needed to pay its tax debt or enroll in a payment plan by December 4, or else California would pursue collection mechanisms. Hale Decl. ¶ 9, Rubinas Decl. ¶ 8. On December 8—apparently without further notice to Rubinas—California issued a levy on IJR's Chase bank account. Hale Decl. ¶ 12. The Department did not immediately

---

[3]At the motion hearing held on January 12, 2021, Rubinas' counsel acknowledged that Rubinas does not contest the facts presented in Hale's declaration (though Rubinas does contest their relative importance).

4

apply the levy to Rubinas's tax debt, because she could have challenged the levy or requested a hardship hearing. *Id*. ¶ 12. On December 18, California issued a notice of the levy to IJR. *Id*. ¶ 13. The next day, on December 19, Rubinas received a notice from Chase reporting that her account had been frozen up to the levied amount based on California's levy notice. Rubinas Decl. ¶ 9. Two days later, California received $2,367.56 from the account. *Id*. On December 28, another Department employee emailed Rubinas's accountant and left him a voicemail about payment-plan options and compromise offers. Hale Decl. ¶ 13. In response, the accountant submitted a revocation of the Power of Attorney authorization, so the Department directly contacted Rubinas (on December 30) about her options. *Id*. ¶ 14. She did not respond. *Id*. On January 7, 2021, the Department applied the levied funds to Rubinas's account. *Id*. ¶ 15.

Rubinas moved for a temporary restraining order and preliminary injunction, asking this Court to stop California from issuing further levies and to require the State to return the already-seized funds. The Court denied Rubinas's motion for a temporary restraining order because the Tax Injunction Act barred subject matter jurisdiction to hear her claims. R. 17 at 7. As this Opinion explains, the motion for a preliminary injunction must be denied for the same reason.

## II. Standard of Review

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008). To prevail on a motion for a

preliminary injunction, the moving party must show: "(1) a likelihood of success on the merits; (2) a lack of an adequate remedy at law; and (3) an irreparable harm will result if the injunction is not granted." *Lambert v. Buss*, 498 F.3d 446, 451 (7th Cir. 2007) (cleaned up).[4] If the moving party meets these requirements, then the court balances the nature and degree of the potential harm to each party and the public interest. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A., Inc.,* 549 F.3d 1079, 1086 (7th Cir. 2008).

### III. Analysis

There is still no doubt that this case presents challenging questions of tax law and fundamental fairness. But Rubinas's claims for injunctive relief cannot succeed because this Court lacks subject matter jurisdiction to hear her case. The California state court system—and ultimately the United States Supreme Court—is where Rubinas must present her claims. Just like the motion for temporary restraining order, the preliminary-injunction motion fails on the threshold issue of likelihood of success.

### A. The Tax Injunction Act

The Tax Injunction Act is concise (relative to most federal laws) and, as the Court previously explained, dispositive in this case: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy[,] and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. A state court remedy must meet "certain minimal *procedural*

---

[4]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

6

criteria" to suffice under the statute. *Rosewell v. LaSalle Nat. Bank*, 450 U.S. 503, 512 (1981) (emphasis in original). A state remedy is procedurally adequate if it "provides the taxpayer with a full hearing and judicial determination at which she may raise any and all constitutional objections to the tax." *Rosewell*, 450 U.S. at 514 (cleaned up).

Each of the three statutory requirements—plain, speedy, and efficient—has received individual attention from the courts. A remedy is "plain" when it is clearly available to the party seeking it. *Lowe v. Washoe Cty.*, 627 F.3d 1151, 1156 (9th Cir. 2010). A remedy is "speedy" if it does not take significantly longer than federal remedies. *Hyatt v. Yee*, 871 F.3d 1067, 1073 (9th Cir. 2017) (cleaned up). It is "efficient unless it imposes an unusual hardship requiring ineffectual activity or an unnecessary expenditure of time or energy." *Id.*

Exceptions to the anti-injunction effect of the Act must be "construe[d] narrowly" to give effect to congressional intent. *California v. Grace Brethren Church*, 457 U.S. 393, 413 (1982). State courts need not provide a perfect or taxpayer-favorable remedy—only one that meets the requirements of the Act: "To satisfy these requirements, a remedy need not necessarily be the best remedy available or even equal to or better than the remedy which might be available in the federal courts." *Hyatt*, 871 F.3d at 1073.

The Court explained in the previous opinion that the remedy available to Rubinas in California state courts is plain, speedy and efficient, which means that the Tax Injunction Act applies. *Rubinas v. Maduros*, F.Supp.3d 994, 999–1004 (N.D. Ill.

7

2021). There is no need to repeat the full analysis here, though it bears repeating that the Court was bound by case law to reject Rubinas's strongest argument: that the lack of availability of injunctive relief in the California system made the remedy inadequate. *Id.* at 1000–01.

Against this, in supplemental briefing, Rubinas raises several creative arguments. Ultimately, however, she has not moved the needle on the dispositive issue: the Tax Injunction Act still applies. This Court still does not have jurisdiction over her claims. First, Rubinas reframes the issue as one of preemption. After the Court questioned the availability of a cause of action under the Internet Tax Freedom Act, Rubinas countered that a cause of action is not necessary, because in this case, "Ms. Rubinas has standing to invoke preemptive federal law." R. 22, Pl. Supp. Br. at 2. But before any federal court can even address a preemption argument, the court must determine if it has subject matter jurisdiction to hear the case. Because of the Tax Injunction Act, in this case the Court does not have subject matter jurisdiction and thus cannot reach the preemption arguments. *See Scott Air Force Base Properties, LLC v. County of St. Clair, Ill.*, 548 F.3d 516, 523 (7th Cir. 2008) (declining to address plaintiff's federal preemption argument because "when the [Tax Injunction] Act applies, a district court is without subject matter jurisdiction and thus can make no further judicial determination").

This means that Rubinas is really asking the Court to make an exception to the Tax Injunction Act and hear her arguments about the Internet Tax Freedom Act, as California correctly explains in its supplemental brief. R. 24, Def.'s Supp. Br. at 1.

8

But there is no textual basis for an exception like that. The Tax Injunction Act has been around for over 80 years, *Grace Brethren Church*, 457 U.S. at 412 n. 25 (citing legislative history dating to 1937), and no exception for claims based on preemption has been carved into the Act. As discussed earlier, the Act is relatively straightforward and the only carve-out from it is the prerequisite of a plain, speedy, and efficient state court remedy. For its part, the Internet Tax Freedom Act, while not quite so venerable at the Tax Injunction Act, is also no longer brand-new: it was first enacted in 1998 on a temporary basis, extended eight times, and finally made permanent in 2015.[5] Congress has repeatedly reexamined and renewed the Internet Tax Freedom Act. But at no time has Congress revised the Act to carve out an exception for it from the Tax Injunction Act. Considering the age and the breadth of the Tax Injunction Act, if Congress meant to exempt Internet Tax Freedom Act claims from its reach, then this exemption needed to be written into the statute. It was not.[6]

Rubinas also points to case law under the Food, Drug, and Cosmetic Act (FDCA) in support of her quest to invoke preemption to challenge the California law. Rubinas Supp. Br. at 3. But in the FDCA case that she cites, preemption arose as a *defense* to products liability claims. *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1675 (2019) ("Merck, in defense, argued that respondents' state-law failure-to-warn claims should be dismissed as pre-empted by federal law"). Moreover, there

---

[5]Stupak, Jeffrey M., *The Internet Tax Freedom Act: In Brief*, Congressional Research Service (Apr. 13, 2016), 1 (https://fas.org/sgp/crs/misc/R43772.pdf).

[6]In the prior opinion, the Court raised the question of whether a cause of action exists under the Internet Tax Freedom Act. But it turns out there is no need to reach the issue, because the Tax Injunction Act is dispositive in this case.

9

is no FDCA equivalent to the Tax Injunction Act in stripping courts of jurisdiction to hear FDCA claims.

Next, Rubinas cites cases in which courts considered a party's Internet Tax Freedom Act claims through a preemption lens. But the cases do not apply here. In *City of Chicago v. StubHub!, Inc.*, the preemption argument arose, again, as a defense to a lawsuit the city had filed to collect a tax. 624 F.3d 363, 365 (7th Cir. 2010).[7] So that case does not establish a right to file an affirmative lawsuit based on the Internet Tax Freedom Act. Rubinas does cite two cases in which a plaintiff filed claims that a state law was preempted by the Internet Tax Freedom Act. *Performance Mktg. Ass'n, Inc. v. Hamer*, 998 N.E.2d 54 (Ill. 2013); *New Cingular Wireless PCS LLC v. Comm'r of Rev.*, 154 N.E.3d 947 (Mass. Ct. App. 2020). But both of those cases were filed in state courts—one in Illinois and the other in Massachusetts—where the federal Tax Injunction Act does not apply. So that too does not help her argument that *this* Court can consider her claims. On the contrary, both cases reinforce this Court's view that any affirmative claims that might be allowed under the Internet Tax Freedom Act must be filed in state court.

Rubinas also expands on her argument that the remedy for a violation of the Internet Tax Freedom Act must include injunctive relief, because of the nature of the Act itself. Pl. Supp. Br. 9–13. But her attempts to distinguish the cases that deem California's tax refund system adequate are not convincing. The Internet Tax

---

[7]It is also worth noting that in *StubHub!*, the Seventh Circuit certified the question of the legality of the tax to the Illinois Supreme Court, preferring to leave questions of municipal taxes to the highest *state* court. 624 F.3d at 367–68.

Freedom Act strips federal courts of jurisdiction over challenges to state and local taxes whenever there is a "plain, speedy, and efficient remedy" in the state courts. The Supreme Court and the appellate courts have provided ample guidance on how to interpret that requirement, as discussed in the previous opinion. Rubinas's argument boils down to an attempt to complicate the requirement in a way that the case law simply does not contemplate. In particular, she insists that there must be a remedy available "in real-time" because of how the Internet Tax Freedom Act is drafted. Pl. Supp. Br. at 6–9. She argues that the Internet Tax Freedom Act, 47 U.S.C. § 151 note, speaks in the present tense when prohibiting discriminatory taxes on online sales, and this means Congress intended that tax collection be stopped in its tracks when it violates the Act. *Id.* But the text of the Tax Injunction Act *also* assumes that State tax collection is—present tense—ongoing: the Act instructs that federal district courts "shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law" if a plain, speedy, and efficient State remedy is available. 28 U.S.C. § 1341. And, as explained in the prior opinion, the case law is clear that California's remedy qualifies as plain, speedy, and efficient. *See Grace Brethren Church* 457 U.S. at 415–16 (1982); *Hyatt v. Yee*, 871 F.3d 1067, 1074 (9th Cir. 2017) (citing *Franchise Tax Bd. of California v. Alcan Aluminium Ltd.*, 493 U.S. 331, 338 (1990)); *see also Jerron West, Inc. v. State of Cal., State Bd. of Equalization*, 129 F.3d 1334, 1339 (9th Cir. 1998); *Mandel v. Hutchinson*, 494 F.2d 364, 367 (9th Cir. 1974).

Finally, Rubinas argues that applying the Tax Injunction Act would "nullify" the Internet Tax Freedom Act. R. 26, Pl. Supp. Reply at 2. The Internet Tax Freedom

11

Act is not being nullified; Rubinas is simply being directed to raise her claims in state court. At a certain point, the arguments and reasoning in this case become repetitive and almost circular. But to address nullification specifically: Congress has long told the federal judiciary not to interfere in state and local taxation matters. In drafting, passing, and passing again the Internet Tax Freedom Act, Congress knew about the preexisting Tax Injunction Act, which would prevent federal courts from hearing challenges to local and state taxes based on the Internet Tax Freedom Act. Yet Congress did not carve out an exception from the Tax Injunction Act for the Internet Tax Freedom Act. When litigants have challenged California's refund procedures as inadequate, including on the grounds that no immediate, injunctive relief was available, the Ninth Circuit and the Supreme Court have rejected those challenges. *Grace Brethren Church* 457 U.S. at 415–16 (1982); *Hyatt v. Yee*, 871 F.3d 1067, 1074 (9th Cir. 2017) (citing *Franchise Tax Bd. of California v. Alcan Aluminium Ltd.*, 493 U.S. 331, 338 (1990)); *see also Jerron West, Inc. v. State of Cal., State Bd. of Equalization*, 129 F.3d 1334, 1339 (9th Cir. 1998); *Mandel v. Hutchinson*, 494 F.2d 364, 367 (9th Cir. 1974). This Court would have to contradict the Supreme Court and the Ninth Circuit to conclude that California's refund procedures are not adequate to the task of handling Rubinas's claims under the Internet Tax Freedom Act. Because the California state courts provide an adequate forum for Rubinas's claims under the Internet Tax Freedom Act, the Act is not "nullified" when this Court follows the Tax Injunction Act and sends Rubinas to the California court system for her remedy.

## B. Other Issues

Both parties have briefed the issue of comity. Def.'s Supp. Br. at 5–6; Pl. Supp. Reply Br. at 6. Because the Tax Injunction Act is dispositive, there is no need to reach this issue. With regard to the merits of the claims, because the Court lacks subject matter jurisdiction over the case, there is no authority to examine the merits of Rubinas's claims. That will be a job for the California state courts and perhaps, eventually, the United States Supreme Court. Lastly, as a reminder, even if subject matter jurisdiction somehow did apply despite the Tax Injunction Act, California's sovereign immunity would preclude the return of the already-seized funds. *Rubinas*, 513 F.Supp.3d at 1004–05.

## IV. Conclusion

The Plaintiffs' motion for a preliminary injunction is denied. Because the Court does not have subject matter jurisdiction to hear the Plaintiffs' claims, this action is dismissed.[8] The tracking status hearing of September 24, 2021, is vacated. Final judgment shall be entered.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 16, 2021

---

[8] The Plaintiffs have agreed to accept a dismissal of the action on jurisdictional grounds (if the Court so held) without requiring the Defendant to file a motion to dismiss. R. 20, Joint Status Report at 1.